# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNETTE SCOTT, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., <br><br> Defendant. | No. 05 C 3004 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Annette Scott ("Scott" or "Plaintiff") has filed suit individually and on behalf of others similarly situated against GlaxoSmithKline Consumer Healthcare ("GSK" or "Defendant") for violating the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1 *et. seq.*, and for unjust enrichment. GSK manufactures Abreva, an over the counter treatment for cold sores, and Valtrex, a prescription drug for the treatment of both cold sores and genital herpes. Scott claims that GSK violated the ICFA when marketing the drugs by promoting the speed with which they supposedly treat the symptoms of various strains of the herpes virus. Scott believes she was injured when she purchased Abreva as a result of those advertisements and has brought suit to recover her damages based on the inflated prices she claims she paid for the drugs. GSK has now filed a motion to dismiss the case for failure to state a cause of action. For the reasons stated below, GSK's motion to dismiss is GRANTED.

**Standard**

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I should grant

Defendant's Motion to Dismiss only if Plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the Complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). Stated another way, I should not grant Defendant's motion "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

**Analysis**

**Standing**

GSK argues that any claims involving Valtrex should be dismissed because Plaintiff lacks standing in three ways. First, Plaintiff lacks constitutional standing, because she has not suffered any injury cause by Valtrex. Second, Plaintiff lacks standing under the ICFA because she was not a consumer of Valtrex. Lastly, GSK believes that Plaintiff has not suffered any actual damage as a result of buying Valtrex. In response, Scott claims that she does have constitutional standing, and she also argues that both the ICFA's protection against unfair acts and practices and the juridical link doctrine have the effect of basing her standing for the Valtrex claim on her standing for the Abreva claim.

At this point, I cannot rule on GSK's arguments concerning constitutional or statutory standing. This case was filed as a class action lawsuit. Although GSK is raising the issue of Scott's standing to pursue the Valtrex claims now, it has been clearly established that in the context of class actions, class certification issues must be dealt with before the trial judge decides

issue about standing. *See Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). "This involves defining the class and assessing whether the proposed class representatives can satisfy all four requirements of Rule 23(a), and at least one of the categories of Rule 23(b)." *Id*. The reason for this order is because certification as a class changes aspects of the suit. "A properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff." *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998). So, even though Plaintiff herself may or may not have suffered an injury, I must defer ruling on whether or not the class as a whole has standing to pursue those Valtrex claims until after I determine that a class should be certified. The issue of actual damages to the class as a result of Valtrex is a statutory standing issue that I must wait to deal with, since Plaintiff has properly alleged class damages.

I will briefly address, however, GSK's incorrect reading of the ICFA to only allow actual "consumers" to file suit. The ICFA's title states that its purpose is to "protect consumers . . . against fraud, unfair methods of competition, and unfair or deceptive acts or practices . . . ." 815 ILCS 505/1. A "consumer" is defined as, "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *Id*. This language only shows that the primary purpose of a suit should be to protect consumers, it does not bar other parties that are not consumers from bringing a claim. For example, a competitor could also file suit against a company for its damages as a result of a violation, as long as the competitor also shows "how the complained-of-conduct implicates consumer protection concerns." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999) (quoting *Brody v. Finch Univ. of Health Sciences*, 698 N.E.2d 257, 268-70 (Ill. App. 1998)). This is the "consumer nexus test."

Therefore, the simple fact that Scott may not be a consumer, by itself, would not disqualify her from filing suit against GSK, as long as she has actual damages that resulted from a violation of the ICFA.

**Preemption by the FDA**

The ICFA provides an exemption for certain types of behavior by businesses. In particular, it states that nothing in the statute shall apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). GSK argues that Scott's claims cannot proceed because the United States Food and Drug Administration (the "FDA") specifically authorized the company to use the statements in the Valtrex advertisements.

The statements at issue in this case with respect to Valtrex are GSK's claims that Valtrex can be used as a "One-Day Cold-Sore Treatment" or "3-day Outbreak Therapy." The one-day treatment and 3-day therapy claims correspond to the recommended dosage when using Valtrex for cold sores and a recurrent outbreak of genital herpes, respectively. According to GSK, these statements were labeling which was specifically authorized by the FDA. GSK points to the new drug application ("NDA") for Valtrex to show that the recommended dosage was approved by the FDA. Plaintiff contends that she does not dispute the labeling of the drug, but is instead focusing on the marketing, which was not specifically authorized by any regulatory body.

There is some overlap between labeling and marketing. Statements can be, and usually are, both advertising and labeling. *See United States v. Kordel,* 164 F.2d 913, 915 (7th Cir. 1947), *aff'd sub nom Kordel v. United States,* 335 U.S. 345 (1948). This is why, even though the FDA usually regulates labeling of drugs and the Federal Trade Commission ("FTC") primarily

4

regulates advertising, neither agency has exclusive jurisdiction. *See Working Agreement Between FTC and Food and Drug Administration,* 4 Trade Reg. Rep. (CCH) ¶ 9850.01, at 17352. However, the exemption from the ICFA is not available when a business makes statements that "manage to be in technical compliance with federal regulations, but which are so misleading or deceptive in context that federal law itself might not regard them as adequate." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001). Therefore, federal labeling laws will not necessarily specifically authorize marketing practices. *See, e.g.*, *Oshana v. Coca-Cola Co.*, No. 04 C 3596, 2005 U.S. Dist. LEXIS 14184, at *23 (N.D. Ill. July 13, 2005).[1]

In this case, there is not enough information in the complaint to state definitively that GSK's statements are labeling that is specifically authorized by the FDA. Plaintiff simply stated that GSK marketed the drug and listed some of the offending statements. Although the claims of one or three-day treatments were authorized when referring to the recommended dosage, viewing everything in the light most favorable to Plaintiff, she could show that, in the context in which they were used, those statements improperly misled consumers. It may also be possible for GSK to show that the marketing was almost identical to the specifically authorized labeling, but at this point there is no evidence to decide one way or the other. So, I must deny GSK's motion with respect to specific authorization by the FDA.

---

[1] I will note, however, that Scott has a *very* difficult burden to show that the statements were not specifically authorized. In highly regulated industries, such as the pharmaceutical industry, the term "specifically authorized by laws administered by" encompasses "the making of statements that 'fall within the boundaries established by federal law' . . . even if those statements may tend to be confusing or misleading . . . ." *Price v. Philip Morris, Inc.*, No. 96236, 2005 Ill. LEXIS 2071, at *128 (Ill. Dec. 15, 2005).

**Proximate Cause**

Next, GSK claims that Scott's ICFA claims should be dismissed because she failed to allege that the deceptive act or practice was the proximate cause of her injury. It argues that Plaintiff is instead trying to use an impermissible market theory of causation. A market theory of causation alleges that, regardless of whether or not Plaintiff was actually deceived by the statements, she was injured by the effect that those statements had on the marketplace for the product. An example of this would be a plaintiff claiming that the defendant's deceptive advertising inflated demand and raised the price of the gasoline higher than it would have been otherwise, injuring everybody that bought gas from that company. *See, e.g.*, *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155-56 (7th Cir. 2002).

In order to state a claim under the ICFA, Plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Id*. at 160; *see also Eromon v. Grand Auto Sales, Inc.*, 351 F. Supp. 2d 825, 827 (N.D. Ill. 2004). Under the ICFA, deceptive advertising cannot be the proximate cause of damages unless it actually deceives the plaintiff. *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004).

At first glance, Scott seems to have alleged a market theory by claiming that the advertisements touting the speed with which Abreva and Valtrex heal outbreaks allowed GSK to charge consumers an inflated price. However, in this case Scott has alleged in her complaint that she and the proposed class were actually deceived by the advertisements into purchasing the drugs. If Plaintiff and prospective class members were actually deceived by the advertisements

6

then this is not an impermissible market theory. Such allegations are sufficient to survive a motion to dismiss. Therefore Defendant's motion to dismiss for failure to allege proximate cause is denied.

**Fraud**

A claim under the ICFA is a fraud claim that must be pled with particularity under *Fed. R. Civ. P.* 9(b). *See Murray v. America's Mortgage Banc, Inc.*, No. 03 C 5811, 2004 U.S. Dist. LEXIS 12045, at *17 (N.D. Ill. June 29, 2004). This means that Plaintiff is required to plead all the circumstances of the fraud in detail. This includes "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The purpose of this is to "force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). This ensures that the claim is "responsible and supported, rather than defamatory and extortionate." *Id*.

In this case, Plaintiff has not sufficiently alleged when and where she or any of the other class members were actually deceived by GSK's marketing efforts. In her brief, Scott simply alleges that GSK's deception has occured "throughout the United States" and "since FDA approval of the drugs." The heightened requirements of Rule 9(b) may be relaxed in some circumstances, such as when the plaintiff does not have access to some of the required facts. *See Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). However, GSK is not in control of the necessary facts in this case. Scott claims that she has no knowledge of the specific dates and geography with which GSK instituted its marketing campaign, but she does not need that information to state a claim. To satisfy Rule 9(b), she only needs to state when and where

she herself was deceived by the statements she mentions and when and where she purchased the drugs at issue. This is information that should clearly be within her knowledge, but was not included in the complaint. Therefore, Count I is dismissed.

**Unjust Enrichment**

Lastly, GSK moves to dismiss Scott's unjust enrichment claim. To state a cause of action for unjust enrichment in Illinois, Scott must allege: (1) that GSK has unjustly retained a benefit to her detriment, and (2) that GSK's retention of that benefit would violate the fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). GSK argues that the claims should be dismissed because they are based upon a violation of the ICFA. So, if the ICFA claim is dismissed, this claim should necessarily follow. Alternatively, GSK believes Count II should be dismissed because unjust enrichment is an equitable remedy and Plaintiff has an adequate remedy at law. Scott argues that her ICFA claim is valid, and also that unjust enrichment is not an equitable remedy, but a legal one.

I will begin with GSK's assertion that unjust enrichment is an equitable claim. The existence of a full and adequate remedy at law is a valid equitable defense. *See Hanley v. Trendway Corp.*, No. 94 C 5406, 1995 U.S. Dist. LEXIS 2691, at *7 (N.D. Ill. Mar. 6, 1995). However, unjust enrichment is not necessarily an equitable action. "[T]hus the existence of a full and adequate remedy at law . . . is not always an appropriate reason for dismissal." *Id*. Scott argues that she is using the principle of unjust enrichment to only seek restitution for the amounts she and prospective class members paid for the drugs. Even though restitution is governed by principles of equity, it is actually an action at law. *Burns Philp Food, Inc. v. Cavalea Cont'l*

*Freight, Inc.*, 135 F.3d 526, 527-28 (7th Cir. 1998). Therefore, GSK is incorrect in stating that this unjust enrichment claim seeks equitable relief. [2]

Lastly, Plaintiff does not and cannot deny that her unjust enrichment claim is predicated upon the validity of her claim under the ICFA. The retention of the money paid by Scott and the potential class is only unjust if GSK committed a violation. Since that underlying ICFA claim is dismissed, the unjust enrichment claim must also be dismissed.

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 12, 2006

---

[2] Based on her prayer for relief, I have some question about whether Plaintiff actually seeks a constructive trust. A constructive trust is a remedy which can only be established on equitable grounds. *See Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 755-56 (Ill. 1994). Although Plaintiff may be barred from pursuing that specific remedy because of an adequate remedy at law, I do not have enough information to decide that issue at this point.